IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| VDF FUTURECEUTICALS, INC., <br><br> Plaintiff, <br><br> v. <br><br> FREED FOODS, INC. d/b/a NURTURME, NM RESIDUAL, INC., and NURTURME INC., <br><br> Defendants. | Case No.  20-cv-00855 |

## COMPLAINT

Plaintiff VDF FutureCeuticals, Inc. ("Plaintiff" or "FutureCeuticals"), by and for its complaint against Defendants Freed Foods, Inc., d/b/a NurturMe ("Freed Foods"), NM Residual, Inc. ("NM"), and NurturMe Inc. ("NurturMe") (collectively, "Defendants"), alleges as follows:

### I.     INTRODUCTION

1.     This case represents a classic example of an insolvent company engaging in fraudulent transactions in order to avoid its contractual obligations.

2.     FutureCeuticals had supplied product to Freed Foods for years before a company called Advantage Capital Agribusiness Partners, L.P. ("ACAP") took over the company.  After obtaining control of Freed Foods, ACAP installed its hand-picked executives, who proceeded to plan a way to continue Freed Foods' business without regard to its contractual obligations.

3.     After falsely telling FutureCeuticals for more than a year to be patient and that Freed Foods was exploring a restructuring so that it could pay its debts to FutureCeuticals, Freed

Foods purportedly sold its assets to a company called NM. But NM was also owned and controlled by ACAP, and the same parties were on both sides of the transaction.

4. Within days of that transaction, NM sold all of its assets to NurturMe in exchange for a majority of NurturMe's common stock.

5. Before, during and after these fraudulent transactions, Freed Foods continued to operate exactly as before – under the same name (NurturMe), and with the same products, trade names, websites, and people.

6. Indeed, following these transactions, NurturMe attempted to place the same order with FutureCeuticals that Freed Foods had attempted to place just before the transactions.

7. The reality is that Freed Foods, ACAP, NM, and NurturMe engaged in the transactions that they did for the express purpose of continuing Freed Foods' business without interruption, avoiding its obligations to FutureCeuticals and keeping the substantial value and equity in Freed Foods that should have gone to pay Freed Foods' creditors, like FutureCeuticals.

8. Under Texas law, however, Freed Foods cannot get away with its fraudulent practice, and both NM and NurturMe are also responsible to FutureCeuticals to the full extent of Freed Foods' obligations to FutureCeuticals.

## II. PARTIES

9. FutureCeuticals is an Illinois corporation with its principal place of business in Illinois, and is thus a citizen of Illinois.

10. Freed Foods was a Delaware corporation with its principal place of business at 400 W. Hwy 290 Spring Bluff Center, Dripping Springs, Texas 78620, and at all relevant times was doing business there, and is thus a citizen of Delaware and Texas.

11. NM is a Delaware corporation with its principal place of business in Louisiana, and is thus a citizen of Delaware and Louisiana.

12. NurturMe Inc. is a Delaware corporation with its principal place of business in New York, and is thus a citizen of Delaware and New York.

13. Thus, based on the foregoing, complete diversity exists, as summarized in the table below:

| Plaintiff<br>(State of incorporation;<br>principal place of business) | Defendants<br>(State of incorporation;<br>principal place of business) |
|---|---|
| **FutureCeuticals**<br>(Illinois; Illinois) | **Freed Foods**<br>(Delaware; Texas) |
| | **NM**<br>(Delaware; Louisiana) |
| | **NurturMe**<br>(Delaware; New York) |

### III. JURISDICTION AND VENUE

14. Jurisdiction is proper under 28 U.S.C. § 1332(a)(1), since this is an action between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

15. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and transactions giving rise to the claims occurred in this judicial district.

### IV. FACTUAL BACKGROUND

#### A. Relationship Between FutureCeuticals and Freed Foods

16. FutureCeuticals is a food, nutritional supplement, and cosmetic ingredient manufacturer and bio-technology company.

17. Freed Foods produced and sold food for infants and toddlers.

18. Freed Foods used fruit, grain, and vegetable ingredients manufactured by FutureCeuticals to produce and sell its products.

19. Pursuant to an agreement between FutureCeuticals and Freed Foods, FutureCeuticals manufactured and delivered food-ingredient products pursuant to purchase orders

issued by Freed Foods (the "Purchase Orders"). A substantial amount of these products were unique, custom fruit, grain, and vegetable blends formulated and manufactured specifically for Freed Foods.

20. Freed Foods was a customer of FutureCeuticals for years, beginning in approximately 2010.

21. Throughout their business relationship, Freed Foods and FutureCeuticals had an agreement under which FutureCeuticals would manufacture and deliver products to Freed Foods pursuant to Purchase Orders (the "Agreements").

22. Freed Foods and FutureCeuticals agreed that upon placement of the Purchase Orders, Freed Foods would be obligated to pay for the entire amount of the products, which would be delivered upon instructions from Freed Foods.

**B.     The Purchase Orders**

23. In 2017, Freed Foods issued Purchase Orders to FutureCeuticals for over $1 million in a variety of food products, including, in relevant part: (1) various blends for the production of NurturMe's Yum-a-Roo toddler snacks; (2) Quinoa Powder; (3) Organic Banana Powder ; and (4) Drum Dried Organic Raisin Powder.

24. FutureCeuticals brings this lawsuit to recover amounts that Defendants owe to it for food ingredients that Freed Foods purchased, but for which FutureCeuticals has never been paid.

25. Freed Foods has repeatedly acknowledged that it is obligated to pay for all of the products that it ordered and that FutureCeuticals manufactured. Indeed, just over one month before the fraudulent transactions were consummated, Freed Foods' then-President Dianne Jacobs *admitted* that Freed Foods owed FutureCeuticals at least $184,000.

26. The only reasons ever given for Freed Foods' lack of payment were its financial hardship, and eventually, the fraudulent transactions by which Freed Foods transferred all of its assets to NM and NurturMe. Freed Foods' own description constitutes an admission of FutureCeuticals' fraudulent transfer claims.

27. Upon recognizing that Freed Foods could not pay for the products that it ordered, FutureCeuticals has attempted in good faith to sell the impacted products to other customers where possible.

28. Notwithstanding FutureCeuticals' efforts, FutureCeuticals was left with thousands of kilograms of these products, including custom manufactured products made to Freed Foods' specifications that cannot be sold to any other party.

29. In total, Freed Foods has failed to pay amounts due to FutureCeuticals totaling in excess of $243,000, without applicable interest.

    **C.**    **Freed Foods' Fraudulent Conveyances – The Details**

30. By July 2019, Freed Foods was insolvent. Its debts included more than $243,000 that it owed to FutureCeuticals.

31. In the weeks preceding Freed Foods' fraudulent transactions, FutureCeuticals had been in contact with Freed Foods demanding payment of Freed Foods' outstanding obligations to FutureCeuticals.

32. FutureCeuticals and Freed Foods discussed Freed Foods' outstanding obligations to FutureCeuticals, including the possibility that FutureCeuticals and Freed Foods would end up in litigation over the dispute.

33. Nonetheless, without any notice to FutureCeuticals, Defendants, along with ACAP – which owned and/or controlled Freed Foods and NM and (through its ownership of NM) owned

a majority of NurturMe's common stock – orchestrated a series of transactions whereby all of Freed Foods' assets were transferred, first to NM, and shortly thereafter, to NurturMe.

34. Because ACAP owned and/or controlled both Freed Foods and NM, the transfer of Freed Foods' assets was to an insider. Indeed, individuals associated with ACAP were on both sides of the transaction, simultaneously attempting to recoup obligations owed from Freed Foods and keeping excess value beyond those obligations for itself.

35. The first transaction took place on or about August 19, 2019, when substantially all of Freed Foods' assets were transferred to NM. The second transaction took place on or about August 28, 2019, when substantially all of Freed Foods' assets were transferred a second time, from NM to NurturMe Inc. (collectively, with the first transaction, the "Fraudulent Conveyances").

36. At the time of the Fraudulent Conveyances, Defendants knew that Freed Foods was insolvent.

37. At the time of the Fraudulent Conveyances, ACAP retained its interests in all of the Defendants, and the purpose of the Fraudulent Conveyances was for Freed Foods to avoid its debt to FutureCeuticals and transfer assets worth more than Freed Foods' debts, including pursuant to agreements Freed Foods entered into with NM and ACAP shortly before the Fraudulent Conveyances, which obligations were forgiven in the Fraudulent Conveyances.

38. NurturMe Inc. is a thinly veiled continuation of, and successor to, Freed Foods. Following the Fraudulent Conveyances, it sold the same products, under the same NurturMe branding, that Freed Foods sold. It had the same president that Freed Foods had, and it operated out of the same offices that Freed Foods operated out of.

39.	Under Texas law, the August 2019 transactions amount to fraudulent conveyances of Freed Foods' assets. As one of Freed Foods' creditors whose debt predated these transfers, FutureCeuticals is entitled to recover the balance owed to it from any or all of Defendants.

40.	NM is a corporate entity that was formed and owned by ACAP on or about August 15, 2019.

41.	On August 19, 2019, ACAP exercised its control over Freed Foods when it transferred substantially all of Freed Foods' assets to NM, purportedly in exchange for NM's cancellation of a $657,000 pre-existing debt owed by Freed Foods to NM (the "Sale").

42.	At all material times, the value of Freed Foods' assets exceeded its outstanding secured debt, including the $657,000 set forth in the Sale, and accordingly, the Fraudulent Conveyances transferred assets that could have and should have been used to satisfy Freed Foods' obligations to FutureCeuticals.

43.	The Sale transferred all of Freed Foods' assets to NM.

44.	FutureCeuticals was not given advance notice of this transaction.

45.	Days later, on August 28, 2019, NM sold the assets it acquired through the Sale – i.e., all of Freed Foods' assets – to NurturMe Inc. (the "Asset Purchase").

46.	FutureCeuticals was not given advance notice of the Asset Purchase.

47.	Freed Foods filed a Certificate of Dissolution on November 6, 2019.

**D.	ACAP, NM, and NurturMe Are Closely Related and Share Common Ownership**

48.	Through its ownership and control, ACAP directed the Fraudulent Conveyances.

49.	For instance, Damon Rawie is part of both NM and ACAP. He is NM's chief financial officer, and signed off on the Sale and Asset Purchase on behalf of NM in this capacity. Mr. Rawie is also a Managing Director of ACAP.

50. As another example, Tyler Mayoras is part of both NM and ACAP. He signed off on the Sale on behalf of ACAP and is a principal of ACAP. He is also listed as NM's notice contact in the Asset Purchase.

51. NM, in turn, owns 225,000 shares of common stock of NurturMe, which was 69.2% of NurturMe's outstanding common stock.

### E. NurturMe Was A Mere Continuation of Freed Foods.

52. Following the Fraudulent Conveyances, NurturMe operated identically to Free Foods.

53. Freed Foods and NurturMe operated from the same offices.

54. Freed Foods and NurturMe used the same website: www.nurturme.com.

55. Freed Foods and NurturMe operated under the same "NurturMe" name and sold the same products with the same branding.

56. Freed Foods and NurturMe had the same senior executives.

57. Freed Foods' President was Diane Jacobs, and she used the email address dianne@nurturme.com. NurturMe's President was Ms. Jacobs, and she still used the email address dianne@nurturme.com.[1]

58. In addition, Dina Masi was a Vice President of Freed Foods, and she was the Chief Financial Officer of NurturMe.

## V. CAUSES OF ACTION

### Count I: Fraudulent Transfer – Violation of TUFTA § 24.005(a)(1)
### (Against All Defendants)

59. FutureCeuticals realleges the allegations of the previous paragraphs as though set out herein in full.

---

[1] Ms. Jacobs also served as the "wind down officer" of Freed Foods.

60. The transfers described above constitute violations of the Texas Uniform Fraudulent Transfer Act ("TUFTA"), Tex. Bus. & Com. Code §§ 24.001-11.

61. TUFTA sets forth a non-exclusive list of the "badges of fraud" under TUFTA § 24.005(b), virtually all of which are established by the facts set forth herein. In combination, they lead to the unavoidable conclusion that Defendants engaged in the Fraudulent Conveyances with fraudulent intent.

62. **Badge of Fraud #1.** ACAP, through its control of Freed Foods, directed the Fraudulent Conveyances for its own benefit as an insider: first to NM, which ACAP owned and controlled; and second to NurturMe, in which ACAP (through its ownership of NM) owned 69.2% of the outstanding common stock. TUFTA § 24.005(b)(1).

63. **Badge of Fraud #2.** NM and NurturMe retained possession or control of the property transferred after the Fraudulent Conveyances; the entities were mere continuations of Freed Foods under different corporate names. *Id.* § 24.005(b)(2).

64. **Badge of Fraud #3.** Defendants concealed the Fraudulent Conveyances from FutureCeuticals. *Id.* § 24.005(b)(3).

65. **Badge of Fraud #4.** Prior to the Fraudulent Conveyances, FutureCeuticals made numerous demands for payment and threatened litigation if the dispute could not be resolved. *Id.* § 24.005(b)(4).

66. **Badge of Fraud #5.** The Fraudulent Conveyances transferred substantially all of Freed Foods' assets. *Id.* § 24.005(b)(5).

67. **Badge of Fraud #7.** After the Fraudulent Conveyances, which were done in secret, Freed Foods avoided paying its debts to FutureCeuticals. Indeed, following the Fraudulent Conveyances, the Freed Foods executives with whom FutureCeuticals had been in discussions,

now asserting that they were NurturMe executives, asserted to FutureCeuticals that Freed Foods no longer existed and had no assets from which to pay its debts to FutureCeuticals. *Id*. § 24.005(b)(7).

68.     **Badge of Fraud #8.** At the time of the Fraudulent Conveyances, ACAP retained its interests in all of the Defendants, and the purpose of the Fraudulent Conveyances was for Freed Foods to avoid its debt to FutureCeuticals and transfer assets worth more than Freed Foods' debts, including pursuant to agreements Freed Foods entered into with NM and ACAP shortly before the Fraudulent Conveyances, which obligations were forgiven in the Fraudulent Conveyances. *Id*. § 24.005(b)(8).

69.     **Badge of Fraud #9.** Freed Foods was insolvent both before and after the Fraudulent Conveyances. *Id*. § 24.005(b)(9).

70.     **Badge of Fraud #10.** The Fraudulent Conveyances in this case occurred shortly after Freed Foods incurred the debts at issue in this case. *Id*. § 24.005(b)(10).

71.     **Badge of Fraud #11.** Through the Fraudulent Conveyances, Freed Foods transferred the essential assets of its business to a lienor and insiders. *Id*. § 24.005(b)(11).

72.     Defendants took these actions with the actual intent to hinder, delay, or defraud FutureCeuticals.

73.     The Fraudulent Conveyances were not good faith transfers of Freed Foods' assets, and neither NM nor NurturMe were good faith transferees of Freed Foods' assets.

74.     As a result, through the Fraudulent Conveyances, Defendants violated TUFTA § 24.005(a)(1).

75.     As a creditor of Freed Foods harmed by Defendants' violations of TUFTA § 24.005(a)(1), FutureCeuticals is entitled to the relief set forth in TUFTA §§ 24.008 and 24.009.

WHEREFORE, on Count I, FutureCeuticals requests judgment in its favor and against Defendants as follows:

(a) Avoidance, attachment, and/or other monetary relief in excess of $75,000;

(b) Prejudgment interest;

(c) Costs and attorneys' fees; and

(d) Such other and further relief as the Court deems just.

### Count II: Fraudulent Transfer – Violation of TUFTA § 24.005(a)(2)
### (Against All Defendants)

76. FutureCeuticals realleges the allegations of the previous paragraphs as though set out herein in full.

77. In addition to liability for "actual intent" transfers under § 24.005(a)(1), described above, all Defendants are liable to FutureCeuticals under TUFTA § 24.005(a)(2). Section 24.005(a)(2) entitles FutureCeuticals to avoid these transfers (and other relief, including attorneys' fees and other equitable relief) even without the need to allege actual intent via the badges of fraud set forth in § 24.005(b).

78. The Fraudulent Transfers here occurred without Freed Foods receiving a reasonably equivalent value in exchange for the transfers it made, and Freed Foods (A) was engaged or was about to engage in the transfers for which its remaining assets were unreasonably small in relation to the transfer; or (B) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond Freed Foods's ability to pay as they came due. Rather, Freed Foods' assets exceeded the value of the debts that were forgiven in connection with the Fraudulent Conveyances, including the forgiveness of a $657,000 debt. TUFTA § 24.005(a)(2).

4819-3817-8760, v. 1

79. Freed Foods was insolvent at the time of the Fraudulent Conveyances. Freed Foods' remaining assets were unreasonably small in relation to the business in which it was engaged. *Id.* at § 24.005(a)(2)(A).

80. Freed Foods incurred debts it knew were beyond its ability to pay. *Id.* at § 24.005(a)(2)(B).

81. The Fraudulent Conveyances were not good faith transfers of Freed Foods' assets, and neither NM nor NurturMe were good faith transferees of Freed Foods' assets.

82. As a result, through the Fraudulent Conveyances, Defendants violated TUFTA § 24.005(a)(2).

83. As a creditor of Freed Foods harmed by Defendants' violations of TUFTA § 24.005(a)(2), FutureCeuticals is entitled to the relief set forth in TUFTA §§ 24.008 and 24.009.

WHEREFORE, on Count II, FutureCeuticals requests judgment in its favor and against Defendants as follows:

(a) Avoidance, attachment, and/or other monetary relief in excess of $75,000;

(b) Prejudgment interest;

(c) Costs and attorneys' fees; and

(d) Such other and further relief as the Court deems just.

### Count III: Fraudulent Transfer – Violation of TUFTA § 24.006(a) (Transfers Fraudulent as to Present Creditors)

**(Against All Defendants)**

84. FutureCeuticals realleges the allegations of the previous paragraphs as though set out herein in full.

85. Defendants are also liable under TUFTA § 24.006(a), which does not require proof of actual intent. Rather, it provides a remedy for FutureCeuticals because Freed Foods' obligations

to FutureCeuticals arose before the Fraudulent Conveyances, the Fraudulent Conveyances were made without receiving reasonably equivalent value in exchange for the transfer, and Freed Foods was insolvent at the time of the Fraudulent Conveyances.

86.     Before the Fraudulent Conveyances, Freed Foods was indebted to FutureCeuticals in an amount in excess of $243,000, exclusive of interest.

87.     At the time of the Fraudulent Conveyances, Freed Foods was insolvent.

88.     On information and belief, Freed Foods did not receive reasonably equivalent value when it transferred all of its assets in the Fraudulent Conveyances.

89.     On information and belief, the Fraudulent Conveyances were not good faith transfers of Freed Foods' assets, and neither NM nor NurturMe were good faith transferees of Freed Foods' assets.

90.     As a result, through the Fraudulent Conveyances, Defendants violated TUFTA § 24.006(a).

91.     As a creditor of Freed Foods harmed by Defendants' violations of TUFTA § 24.006(a), FutureCeuticals is entitled to the relief set forth in TUFTA §§ 24.008 and 24.009.

WHEREFORE, on Count III, FutureCeuticals requests judgment in its favor and against Defendants as follows:

    (a) Avoidance, attachment, and/or other monetary relief in excess of $75,000;

    (b) Prejudgment interest;

    (c) Costs and attorneys' fees; and

    (d) Such other and further relief as the Court deems just.

4819-3817-8760, v. 1

**Count IV: Fraudulent Transfer – Violation of TUFTA § 24.006(b)**
**(Transfers to Insiders – Fraudulent as to Present Creditors)**
**(Against All Defendants)**

92.     FutureCeuticals realleges the allegations of the previous paragraphs as though set out herein in full.

93.     Defendants are also liable under TUFTA § 24.006(b), which creates liability for Fraudulent Conveyances to insiders. Here, the Fraudulent Conveyances were to insiders, Freed Foods was insolvent at the time of the Fraudulent Conveyances, and the Fraudulent Conveyances were made on account of antecedent debts.

94.     Before the Fraudulent Conveyances, Freed Foods was indebted to FutureCeuticals, and owed FutureCeuticals in excess of $243,000, exclusive of interest.

95.     Before the Fraudulent Conveyances, Freed Foods was indebted to NM.

96.     At the time of the Fraudulent Conveyances, Freed Foods was insolvent.

97.     At the time of the Fraudulent Conveyances, Freed Foods and NM were owned or controlled by the same people associated with ACAP.

98.     At the time of the Fraudulent Conveyances, ACAP and NM knew, or had reasonable cause to believe, that Freed Foods was insolvent.

99.     At the time of the Fraudulent Conveyances, the value of Freed Foods' assets exceeded the amount of its debts, including the $657,000 debt to NM that was forgiven as part of the Fraudulent Conveyances.

100.    ACAP, through its control of Freed Foods, directed the Fraudulent Conveyances for its own benefit as an insider: first to NM, which ACAP owned and controlled; and second to NurturMe, in which ACAP (through its ownership of NM) owned 69.2% of the outstanding common stock.

4819-3817-8760, v. 1

101. Accordingly, neither NM nor NurturMe were good faith transferees of Freed Foods' assets.

102. As a result of the foregoing, through the Sale and Asset Purchase, Defendants violated TUFTA § 24.006(b).

103. As a creditor of Freed Foods harmed by Defendants' violations of TUFTA § 24.006(b), FutureCeuticals is entitled to the relief set forth in TUFTA §§ 24.008 and 24.009.

WHEREFORE, on Count IV, FutureCeuticals requests judgment in its favor and against Defendants as follows:

(a) Avoidance, attachment, and/or monetary relief in excess of $75,000;

(b) Prejudgment interest;

(c) Costs and attorneys' fees; and

(d) Such other and further relief as the Court deems just.

### Count V: Claim for Attorneys' Fees and Expenses
(Against All Defendants)

104. FutureCeuticals realleges the allegations of the previous paragraphs as though set out herein in full.

105. Under TUFTA § 24.013, the Court may award costs and reasonable attorneys' fees as are equitable and just. Accordingly, FutureCeuticals requests that upon judgment in its favor, it be awarded its reasonable attorneys' fees, expenses, and costs of court.

## **Count VI: Exemplary Damages**
**(Against All Defendants)**

106. FutureCeuticals realleges the allegations of the previous paragraphs as though set out herein in full.

107. With respect to the claims listed above for which FutureCeuticals seeks recovery of exemplary damages, and as provided under Tex. Civ. Prac. & Rem. Code § 41.009, FutureCeuticals will satisfy, or has satisfied, the statutory requirements for recovery of such damages, that is, that clear and convincing evidence show that the harm to FutureCeuticals resulted from Defendants' intentional, knowing, and willful fraud, malice, or gross negligence and that actual damages greater than nominal damages were also incurred. Defendants' acted with a specific intent to cause substantial injury to FutureCeuticals; alternatively, Defendants' conduct, when viewed objectively from their standpoint at the time of its occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to FutureCeuticals; and Defendants had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to FutureCeuticals' rights, safety, or welfare.

## VI. CONDITIONS PRECEDENT

108. On information and belief, all conditions precedent to FutureCeuticals' claims for relief have been performed, have occurred, or have been waived.

## VII. JURY TRIAL DEMAND

109. FutureCeuticals hereby demands a jury trial on all issues that are triable by jury.

## VIII. CONCLUSION AND PRAYER

110. FutureCeuticals prays that the Court conduct a trial on all claims against Defendants and it prays for recovery on its claims and causes of action against Defendants and that the Court award the following relief to FutureCeuticals:

(a) A judgment avoiding, attaching, and/or providing other monetary relief to the extent necessary to satisfy FutureCeuticals' claims against Freed Foods;

(b) An amount for the consequential, incidental, and special, including exemplary, damages suffered by FutureCeuticals;

(c) Pre-judgment and post-judgment interest;

(d) Court costs;

(e) Attorneys' fees; and

(f) Any and all other relief, both legal and equitable, to which FutureCeuticals may show itself justly entitled.

Dated: August 14, 2020.

4819-3817-8760, v. 1

          Respectfully submitted,

          **BISSINGER, OSHMAN & WILLIAMS LLP**

          By: /s/ David K. Bissinger
                David K. Bissinger
                State Bar No. 00790311
          2229 San Felipe, Suite 1500
          Houston, TX 77019
          Telephone: 713-524-8811
          Facsimile: 713-583-8347
          Email: dbissinger@bowllp.com
          Signature on file with the U.S. District Clerk

          ***Attorney in Charge for Plaintiff***
          ***VDF FutureCeuticals, Inc.***

**OF COUNSEL:**

**GOLDBERG KOHN LTD.**

A. Colin Wexler
Illinois State Bar No. 6270813
Kyle Walther
Illinois State Bar No. 6294030
55 East Monroe, Suite 3300
Chicago, Illinois 60603
Telephone: 312-863-7467
Facsimile: 312-863-7467
Email: Colin.Wexler@goldbergkohn.com
Email: Kyle.Walther@goldbergkohn.com

***Pro Hac Vice Pending***